**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

JOSEYORKIS LUGO ECHEVARRIA, )
 )
   Petitioner, )
 )
v. ) Case No. 6:26-CV-03217-BCW
 )
SHERIFF JIM C. ARNOTT, Greene )
County, Missouri, Sheriff, et al., )
 )
   Respondents. )

## <u>ORDER</u>

Before the Court is Petitioner Joseyorkis Lugo Echevarria's Petition for Writ of Habeas Corpus. (Doc. #1). The Court, being duly advised of the premises and in consideration of the Petition, the Respondents' brief (Doc. #5), and Petitioner's Traverse (Doc. #6), grants the petition for habeas corpus relief as follows.

## BACKGROUND

On April 10, 2026, Petitioner Joseyorkis Lugo Echevarria, through counsel, filed the instant petition for writ of habeas corpus in this Court, alleging two claims for relief: (1) Denial of Custody Redetermination Based on Legal Error; and (2) Violation of Fifth Amendment Due Process Clause. (Doc. #1). Petitioner asserts that the Department of Homeland Security's ("DHS") "interpretation of its detention authority is wrong" and his current detention by Immigration and Customs Enforcement ("ICE") and the April 1, 2026, redetermination custody hearing violated his statutory and constitutional due process rights. Id.

As set forth in his Petition, Petitioner is in the custody of the U.S. Department of Homeland Security ("DHS"), housed at the Greene County Jail in Springfield, Missouri. (Doc. #1 at 2). Petitioner's petition for habeas relief names the following Respondents in their respective official

1

capacities: (1) Jim C. Arnott, Sheriff of Greene County, Missouri; (2) Samual Olson, Field Office Director for the Kansas City ICE Office; (3) Todd Lyons, Senior Official Performing the Duties of the Director of ICE; (4) Markwayne Mullin, Secretary of the Homeland Security ("DHS"); (5) Todd Blanche, Acting Attorney General of the United States; (6) ICE; (7) the Executive Office for Immigration Review ("EOIR"); and (8) DHS. The Court collectively refers to the federal defendants as the "Government."

The Government does not contest the facts alleged in the petition. (Doc. #5). Petitioner is a native and citizen of Cuba, who has been residing in the United States since March 22, 2021, when he entered the United States near Brackettville, Texas to seek asylum. (Doc. #1). On that date, ICE granted Petitioner parole pursuant to § 212(d)(5)(A) of the Immigration and Nationality Act ("INA"). (Doc. #1-1). On June 24, 2021, ICE issued an Interim Notice Authorizing Parole. (Doc. #1-2). Petitioner timely filed for asylum, withholding of removal, and protection under the United Nations Convention Against Torture with the United States Citizenship and Immigration Services ("USCIS"). (Doc. #1-3).

Since being paroled, Petitioner has reported to ICE as required and appeared in immigration court as required. (Doc. #1 at 2). On December 9, 2024, an immigration judge dismissed without prejudice Petitioner's original Notice to Appear and removal proceedings. (Doc. #1-4 at 3).

On December 17, 2025, authorities detained Petitioner following a traffic stop. Id. A new Notice to Appear issued on December 18, 2025, which charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I) as "an alien present in the United States without being admitted or paroled" and for lacking proper documentation, respectively. (Doc. #1-6). Petitioner is currently detained at the Greene County Jail in Springfield, Missouri. (Doc. #1 at 2).

Prior to his current detention, Petitioner has no arrests other than his initial detention when entering the United States on March 22, 2021. He has never been charged with or convicted of any crime, and there has been no change in circumstances since ICE placed him in detention on December 17, 2025.

On April 1, 2026, an immigration judge denied Petitioner bond at a custody redetermination hearing, finding the immigration court did not have jurisdiction to grant bond under Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). (Doc. #1-8). Petitioner states he does not challenge the initiation of removal proceedings or discretionary custody determination.

On April 13, 2026, this Court issued an Order to Show Cause why the relief sought in Petitioner's petition for habeas relief should not be granted. (Doc. #4). The Government filed a timely response to the Order to Show Cause on April 16, 2026. (Doc. #5). On April 18, 2026, Petitioner filed his traverse. (Doc. #6).

## LEGAL STANDARD

A person, including an individual challenging detention relating to immigration proceedings, detained by the Government may challenge the legality of the confinement through a petition for writ of habeas corpus. Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004); Zadvydas v. Davis, 533 U.S. 678, 687 (2003). The petitioner "bears the ultimate burden of showing that his detention violates the law." See Copenhaver v. Bennett, 355 F.2d 417, 422 (8th Cir. 1966). The petitioner "must satisfy his burden of proof by a preponderance of the evidence." Freeman v. Pullen, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (cleaned up).

Petitioner seeks relief pursuant to the INA and the Due Process Clause of the Fifth Amendment. (Doc. #1). Avila forecloses Petitioner's statutory argument. In Avila, a split panel of the Eighth Circuit held that 8 U.S.C. § 1225(b)(2)(A) "mandates the detention of unadmitted aliens already present inside the United States" and does not require the Government provide them a bond hearing regardless of how long the noncitizen has been present in the country. 170 F.4th at 1136. This Court is bound by Avila and declines to address Petitioner's statutory argument further.

Avila, however, did not reach the due process issue presented by Petitioner. Avila, 170 F.4th at 1140 n.8 (Erickson, J., dissenting) (noting several district courts within the Fifth Circuit granted habeas relief to immigration detainees for due process violations after that court held § 1225(b)(2)(A) controlled).

The Fifth Amendment guarantees that: "No person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This constitutional right belongs to all "persons" present in the United States, whether citizen or noncitizen, here lawfully or unlawfully, temporarily or permanently. Zadvydas, 533 U.S. at 693.

Since Avila, district courts in the Eighth Circuit are split on whether the Government's current interpretation and enforcement of § 1225(b)(2)(A) violates due process rights. See Rocha Medina v. Arnott, No. 6:26-cv-3170-MDH, 2026 WL 915582 (W.D. Mo. Apr. 3, 2026) (releasing detainee for due process violations); Ersultan Ermekov v. Mullin, No. C26-41-LTS-KEM, 2026 WL 1046766, at *3-4 (N.D. Iowa Apr. 17, 2026) (same); Alicia N.F.C. v. Blanche, No. 26-2145 (DWF/JFD), 2026 WL 1005079, at *3 (D. Minn. Apr. 14, 2026) (finding due process violations and ordering bond hearing); Dos Santos Silva v. Warden, Lincoln Cnty. Det. Ctr., No. 26-cv-131, 2026 WL 926725, at *1 (D. Neb. Apr. 6, 2026) (government cannot recategorize released

4

immigrants without due process); but see Romero v. Brown, -- F. Supp. 3d --, 2026 WL 1021455, at *6-7 (S.D. Iowa Apr. 15, 2026) (rejecting due process claim); Boubacar v. Blanche, No. 8:26CV59, 2026 WL 972708, at *3 (D. Neb. Apr. 10, 2026) (same). This Court joins the courts finding a due process violation.

To evaluate Petitioner's due process claim, the Court conducts a two-step inquiry to evaluate whether his detention offends a constitutionally protected interest. See Williams v. Hobbs, 662 F.3d 994, 1000 (8th Cir. 2011). First, Petitioner must establish he has been "deprived of life, liberty, or property by government action." Id. (quotation omitted). Next, the Court determines "what process is necessary to protect that interest". Id. (quotation omitted).

**A.     The Government has deprived Petitioner of his interest in being free from civil detention, which he gained when he was released into the interior of the United States and established substantial connections to the country during the five years he has resided here.**

First, the Court must determine if the Government has deprived Petitioner of a constitutionally protected interest. Petitioner claims the Government has deprived him his liberty by detaining him without an individualized, meaningful bond hearing. (Doc. #1). The Government does not contest that Petitioner is detained, but argues Petitioner is not entitled to be free from detention as an "applicant for admission." (Doc. #5). It contends that (1) Petitioner's due process claim is a substantive, not procedural, due process challenge and the INA grants him the process he is due; (2) Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), forecloses any procedural due process claim; and (3) Demore v. Kim, 538 U.S. 510 (2003), supports that Petitioner is not entitled to a bond hearing.

In this section, the Court first addresses the nature of Petitioner's due process claim, then determines if the Government has deprived Petitioner of a protected interest and concludes by addressing the Government's arguments.

5

**1.**     ***Petitioner's due process claim is both procedural and substantive in nature. The Court resolves the procedural due process claim.***

The Due Process Clause creates two categories of rights: procedural and substantive. Procedural due process imposes constraints on the government's ability to deprive persons of liberty, Rocha Medina, 2026 WL 915582, at *3 (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)), and requires the Government to "observe minimum procedural safeguards" before depriving a person of a protected interest. Hilson v. Waukee Cmty. Sch. Dist., 669 F. Supp. 3d 760, 767 (S.D. Iowa 2023) (citing Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 897 (8th Cir. 2020)). Substantive due process protects "individual liberties from government action regardless of the fairness of the procedures used to implement them." Mitchell, 959 F.3d at 898 (quotation omitted).

Petitioner does not delineate whether he alleges violations of his procedural or substantive due process rights. (Doc. #1). Reading the habeas petition as a whole, Petitioner's due process claim raises both substantive and procedural due process issues. But, while "it is sometimes helpful, as a matter of doctrine, to distinguish between substantive and procedural due process, the two concepts are not mutually exclusive, and their protections often overlap." Albright v. Oliver, 510 U.S. 266, 302 (1994) (citation omitted) (Souter, J., concurring).

The Government argues Petitioner "is not challenging the process for determining whether an alien is an 'applicant for admission' as a factual matter, or whether an alien is 'clearly and beyond a doubt entitled to be admitted' …." (Doc. #5 at 4) (emphasis in original). The Government, therefore, contends Petitioner's is not asserting a procedural due process challenge, but rather he is challenging the substantive determination that § 1225(b)(2)(A) controls his situation. The Court does not agree that Petitioner's challenge is so limited for two reasons.

6

First, Petitioner's due process challenge is independent of his statutory argument. He argues that his re-detention without an opportunity to be heard violates the liberty interest he gained when the Government released him into the United States on parole in March 2021. (Doc. #1 at 13-17). This as-applied challenge attacks the process and the substance.

Second, the Government's position that the Court should reject Petitioner's due process challenge based on the text of § 1225 relies on circular reasoning. See Aliaga Zamora v. Bondi, No. SA-26-CA-00447-XR, 2026 WL 693054, at *4 (W.D. Tex. Mar. 10, 2026). Petitioner's due process "claim is *constitutional*, not statutory, in nature." Id. (emphasis in original). "Legislation cannot detract from the privilege afforded by the constitution." Counselman v. Hitchcock, 142 U.S. 547, 565 (1892) overruled on other grounds by Kastigar v. United States, 406 U.S. 441 (1972). Where the Due Process Clause applies, the question is what process is due. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). "The answer to that question is not to be found in the … statute," id., and depends "upon the status and circumstance" of the individual asserting the right. Zadvydas, 533 U.S. at 694 (citing Landon v. Plasencia, 459 U.S. 21, 32-34 (1982); Johnson v. Eisentrager, 339 U.S. 763, 770 (1950)).

Thus, contrary to the Government's argument otherwise, Petitioner is asserting a procedural due process claim. Because the Court finds the process constitutionally insufficient, it addresses the substantive due process issue only to the extent that it overlaps with the procedural due process violation. Albright, 510 U.S. at 302 (Souter, J., concurring). Accordingly, the Government's lengthy discussion of Connecticut Department of Public Safety v. Doe, 538 U.S. 1 (2003), is not addressed herein.

7

**2.** ***Petitioner has a constitutional interest in his liberty, which precludes the Government from detaining him without due process.***

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Civil detention generally violates the Due Process Clause except in "special and narrow nonpunitive circumstances" where a "special justification" "outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id.

One special nonpunitive circumstance lies in the immigration context. See Landon, 459 U.S. at 32; Thuraissigiam, 591 U.S. at 107, 140. A noncitizen "seeking initial admission into the United States requests a privilege and has no constitutional rights regarding his *application*." Landon, 459 U.S. at 32 (emphasis added). And one at the "threshold of initial entry" only has "those rights regarding admission that Congress has provided by statute." Thuraissigiam, 591 U.S. at 107, 140. Therefore, a noncitizen arriving at the border has not yet gained a constitutionally protected liberty interest.

However, once entered, noncitizens are entitled to challenge the legality of their *detention* through habeas corpus. Trump v. J.G.G., 604 U.S. 670, 673 (2025); Boumediene v. Bush, 553 U.S. 723, 771 (2008). As explained in Zadvydas,

> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

533 U.S. at 693 (citations omitted).

"[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." United States v.

Verdugo-Urquidez, 494 U.S. 259, 271 (1990). "A noncitizen may establish substantial presence in the United States based on … the government's parole or release of the detainee into the interior after their initial apprehension." Aliaga Zamora, 2026 WL 693054, at *8. "Noncitizens who have lived with relative freedom in the United States for extended periods – unlike those detained in immigration processing centers at the boarder – cannot reasonably be deemed never to have been 'here.'" Id. (citations omitted).

The Government has re-detained Petitioner pursuant to the mandatory detention provision in § 1225(b)(2)(A), asserting he is an "applicant for admission" who has not yet been admitted. Avila, 170 F.4th at 1136. However, the Government paroled Petitioner pursuant to § 1182(d)(5)(A) – an exception to mandatory detention – when he first arrived in March 2021. This exception permits parole "for urgent humanitarian reasons or significant public benefit" and is addressed on a case-by-case basis and granted only if the noncitizen presents neither a flight nor security risk. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, the Government found Petitioner presented neither a flight risk nor a security risk by granting him parole.

Under Zadvydas and Verdugo-Urquidez, Petitioner is entitled to greater process before denying him his liberty interest than a noncitizen detained at the border because he has established a substantial presence in the United States over the last five years.

### 3. *Thuraissigiam* and *Demore* are distinguishable.

The Government argues the Supreme Court's decisions in Thuraissigiam and Demore stand for the proposition that Petitioner has no constitutional right to hearing while being detained for removal proceedings. The Court does not agree. The circumstances here are distinguishable from those in Thuraissigiam and Demore and warrant more protections.

9

### a. *Thuraissigiam* is inapposite.

Contrary to the Government's argument, the <u>Thuraissigiam</u> decision does not change the level of process to which Petitioner is entitled. In <u>Thuraissigiam</u>, a noncitizen entered the United States illegally, encountered Border Patrol officers 25 yards into the country, and was detained for expedited removal. 591 U.S. at 114. The petitioner in that case claimed a fear of being returned to his home country. <u>Id.</u> An asylum officer held a credible fear hearing, determined he lacked a credible fear of persecution and, therefore, was not eligible for asylum, and ordered him removed. <u>Id.</u> He then filed a federal habeas petition, seeking a new opportunity to apply for asylum. <u>Id.</u>

The Supreme Court found that the noncitizen was not seeking to be released from detention, but rather a new credible fear hearing. <u>Id.</u> at 117-18. The Supreme Court held that his requested relief was not available in habeas proceedings. <u>Id.</u> at 119-20.

Here, Petitioner is seeking release from re-detention, or at minimum, the opportunity to be heard on the matter. He is not seeking a determination on his admissibility. In <u>Thuraissigiam</u>, the Supreme Court reasoned that a writ of habeas corpus's function is to secure release from illegal custody. <u>Id.</u> at 117. In contrast with the petition in <u>Thuraissigiam</u>, that is exactly the relief Petitioner seeks. Thus, <u>Thuraissigiam</u> is inapposite.

### b. *Demore* is not controlling.

<u>Demore</u> is not instructive. In <u>Demore</u>, the Supreme Court held that mandatory detention under § 1226(c) did not violate the due process clause because it applied to noncitizens convicted of serious crimes that were detained for a limited period during their removal proceedings. 538 U.S. at 531.

<u>Demore</u> is distinguishable for several reasons. First, it challenged a different statutory provision mandating detention of noncitizens convicted of crimes. <u>Id.</u> at 518-21. Congress made

10

detailed findings when enacting § 1226(c) to support mandatory detention of criminal noncitizens, specifically a significant percentage of criminal noncitizens failing to appear for their removal hearings. Id. Congress has not made similar findings justifying mandatory detention under § 1225(b)(2)(A) of noncitizens without any criminal history who have established a substantial presence in the United States.

Next, Demore posed a facial challenge to § 1226(c) based on a substantive due process violation and did not preclude as-applied challenges to the process like the one in the instant case. Id. at 531-32 (Kennedy, J., concurring) (noting provision may offend due process if detention for removal is unreasonably prolonged). Finally, the Demore petitioner had received due process during his criminal proceedings whereas Petitioner has received no process since his re-detention. Id. at 513. Consequently, the Government's reliance on Demore is misplaced.

Concluding the Government has deprived Petitioner of his liberty interest, the Court now determines what process is needed to protect that interest. Williams, 662 F.3d at 1000.

**B.      Petitioner is entitled to release from detention subject to the conditions in place immediately prior to his re-detention on December 17, 2025.**

Because Petitioner is entitled to some process concerning his detention, "the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Id. (citing Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 895 (1961)). In Mathews, the Supreme Court set forth three factors to consider in procedural due process challenges:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally,

11

the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334-35. The factors weigh in favor of Petitioner.

### 1. Petitioner's private interest in being free from detention is strong.

"[T]he private interest at stake here 'is the most elemental of liberty interests—the interest in being free from physical detention.'" Rocha Medina, 2026 WL915582, at *3 (quoting Hamdi, 542 U.S. at 529). "Freedom from imprisonment … lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Even in the criminal context, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). In the civil context, detention "for any purpose constitutes a significant deprivation of liberty that requires due process protections." Addington v. Texas, 441 U.S. 418, 425 (1979); see Zadvydas, 533 U.S. at 690 (immigration proceedings "are civil, not criminal"). This factor weighs strongly in Petitioner's favor.

### 2. The risk of erroneous deprivation is high.

The second Mathews factor asks if the challenged procedure creates a risk of erroneous deprivation of a person's private rights and if alternative procedures could mitigate these risks. As the Aliaga Zamora court stated:

> Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. See Yamataya v. Fisher, 189 U.S. 86, 101 (1903). And the Supreme Court has required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. See Goldberg v. Kelly, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).
>
> Here, the risk of an erroneous deprivation of Petitioner's rights is high. Without an individualized hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained. An individualized assessment before an immigration

12

judge substantially reduces this risk. Cf. Demore, 538 U.S. at 531–32 (Kennedy, J., concurring) (reasoning that "due process requires individualized procedures to ensure there is at least some merit to the" charge and detention).

2026 WL 693054, at *13.

Detention certainly deprives Petitioner of the constitutional liberty interest he gained when the Government paroled Petitioner in March 2021 and released him into the United States. An alternative procedure that mitigated the risks of an erroneous deprivation was in place prior to Petitioner's re-detention. When paroled, the Government conditioned his release subject to certain requirements, such as periodic reporting to immigration authorities.

There is no evidence that Petitioner failed to comply with those conditions and reported to immigration authorities as required. Further, Petitioner has no criminal record. There is no indication that Petitioner's individual circumstances have changed. This established procedure secured the Government's interests in ensuring that Petitioner appeared for removal proceedings and did not present a security risk while protecting his liberty interest. Thus, the Court finds re-detention creates a significant risk of erroneous deprivation of Petitioner's liberty interest as compared to the alternative procedure. Consequently, the second Mathews factor also weighs in Petitioner's favor.

### 3. The Government's burden does not outweigh Petitioner's interests.

The final Mathews factor requires the Court to consider the burden of the alternative process on the Government, including the fiscal and administrative burdens associated with an additional or substitute procedural requirement. 424 U.S. at 335. The Court recognizes that the Government has an interest is removing deportable noncitizens, ensuring compliance with conditions of release, and protecting the public. Zadvydas, 533 U.S. at 690 (noting two regulatory goals of immigration laws: "ensuring the appearance of aliens at future immigration proceedings"

13

and "preventing danger to the community"). But those interests can be adequately served through individualized hearings, whether the hearings are formal before an immigration judge or informal like Petitioner's periodic check-ins.

The Government does not contend it is unable to provide an additional level of process or that the burdens to do so would be fiscally or administratively prohibitive. And the Government does not argue the prior procedures failed to adequately protect its interests in Petitioner's circumstances. Nor could the Government credibly make such arguments. Until last year, the Government had routinely provided meaningful bond hearings for nearly thirty years. As to Petitioner specifically, his periodic check-ins with immigration authorities ensured he was not a flight or security risk. Consequently, re-detention does not appear to serve any permissible purpose of confinement. See Wong Wing v. United States, 163 U.S. 228, 237-38 (1896) (civil detention cannot be punitive); Kansas v. Crane, 534 U.S. 407, 412 (2002) (civil detention is punitive if used as "a mechanism for retribution or general deterrence").

Petitioner's behavior while on parole (no criminal charges or convictions and complying with reporting requirements) demonstrates that the Government's interests are met with a less restrictive burden on Petitioner's liberty. And the Government has not presented any evidence that Petitioner's removal is in the foreseeable future. Under these circumstances, Petitioner's liberty interest outweighs the Government's interest in detaining him without an individualized hearing.

**C.     The proper remedy under the circumstances here is release.**

"When protected interests are implicated, the right to some kind of prior hearing is paramount." Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1970); see Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 848 (1977) ("It is true that before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for

14

extraordinary situations ….") (cleaned up). Despite Petitioner's liberty interest, on April 1, 2026, an immigration judge denied Petitioner bond at a custody redetermination hearing because the immigration judge stated he had no jurisdiction pursuant to <u>Matter of Yajure Hurtado</u> and <u>Avila</u>. (Doc. #1 at 3). The finding of no jurisdiction effectively resulted in no opportunity to be heard.

After <u>Avila</u>, ordering a bond hearing would be futile as it would require the immigration judge "to do that which he believes he lacks authority to do." <u>Rocha Medina</u>, 2026 WL 915582, at *4. The Government provides no alternative forum in which Petitioner could receive an individualized hearing to seek release. This is the equivalent of no process. The Government's position that Petitioner is not entitled to process cannot be reconciled with the Fifth Amendment's Due Process Clause.

"[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). The Court has found Petitioner is being detained without an opportunity to be heard in violation of the Fifth Amendment. Given Petitioner complied with the conditions the Government imposed on him when it paroled him into the country in March 2021 and faced no criminal charges or convictions since entering the country, the Court concludes Petitioner is neither a flight risk nor a security risk at this time. As such, release is the appropriate remedy. Accordingly, it is hereby

ORDERED Petitioner's Petition for Writ of Habeas Corpus is GRANTED. It is further

ORDERED that the Government immediately release Petitioner from custody, no later than 10:00 a.m. CT on May 2, 2026, subject to and in accordance with the conditions in his preexisting parole/release requirements. It is further

ORDERED that, no later than 10:00 a.m. CT on May 4, 2026, counsel for Respondents shall provide a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner was released from custody in accordance with this Order.

IT IS SO ORDERED.

Date: <u>May 1, 2026</u>

<u>/s/ Brian C. Wimes</u>
BRIAN C. WIMES, CHIEF JUDGE
UNITED STATES DISTRICT COURT